Jamie M. Brickell
M. Mona Simonian
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036
Tel.: (212) 421-4100
jbrickell@pryorcashman.com
msimonian@pryorcashman.com

*Attorneys for Plaintiffs Ocinomled Ltd., Ferdo Grgurev,*
*Omer Grgurev and 50/50 Restaurant Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OCINOMLED LTD.,<br>FERDO GRGUREV,<br>OMER GRGUREV and<br>50/50 RESTAURANT CORP.,<br><br>                         *Plaintiffs*,<br><br>                  -v.-<br><br>MILAN LICUL, BRANKO TURCINOVIC,<br>DENNIS TURCINOVIC, FIVE "M" CORP.,<br>268 SH RESTAURANT CORP.,<br>DELMONICO'S DISTRIBUTION LLC and<br>268 SH REALTY CORP.,<br><br>                         *Defendants*. | Civil Action No. _____<br><br>**ECF CASE**<br><br>**COMPLAINT** |

Plaintiffs Ocinomled Ltd., Ferdo Grgurev, Omer Grgurev, and 50/50 Restaurant Corp.

("Plaintiffs"), by their attorneys, Pryor Cashman LLP, as and for their Complaint against

Defendants Milan Licul, Branko Turcinovic, Dennis Turcinovic, Five "M" Corp., 268 SH

Restaurant Corp., Delmonico's Distribution Corp. and 268 SH Realty Corp. ("Defendants"),

hereby allege as follows:

## NATURE OF THE ACTION

1.     This is an action for, among other things, infringement based on Defendants' blatant use of the valuable service mark owned by Plaintiff Ocinomled, Ltd. ("Ocinomled")[1] in the world-renowned "Delmonico's" name in connection with Defendants' own restaurants and products without authorization, license or just compensation to Plaintiffs.

2.     In addition, certain Defendants have breached fiduciary duties and duties of loyalty to Plaintiffs by, among other things, misappropriating funds and property belonging to Plaintiff Ocinomled and essentially using Ocinomled as their personal "piggy bank" to fund their own business ventures, all to the detriment of Plaintiffs.  Defendants' unauthorized use of the Delmonico's name and Ocinomled's funds and property also constitutes unfair competition, deceptive trade practices and conversion, causing damage to Plaintiffs.

## THE PARTIES

3.     Plaintiff Ocinomled is a corporation duly organized and existing pursuant to the laws of the State of New York and maintains its principal place of business at 56 Beaver Street, New York, New York 10004.

4.     Plaintiff Ferdo Grgurev is an individual residing in Englewood Cliffs, New Jersey and regularly conducts business in the State of New York.

5.     Plaintiff Omer Grgurev is an individual residing in Ft. Lee, New Jersey and regularly conducts business in the State of New York.

6.     Plaintiff 50/50 Restaurant Corp. is a corporation duly organized and existing pursuant to the laws of the State of New York and maintains a principal place of business at 50 W. 77th Street, New York, New York 10024.

---

[1] "Ocinomled" is "Delmonico" spelled backwards.

2

7.     Defendant Milan Licul, is an individual residing, upon information and belief, in New York, New York, and regularly conducts business in the State of New York.

8.     Defendant Branko Turcinovic, is an individual residing, upon information and belief, in Syosset, New York, and regularly conducts business in the State of New York.

9.     Defendant Dennis Turcinovic, is an individual residing, upon information and belief, in New Hyde Park, New York, and regularly conducts business in the State of New York.

10.     Defendant Five "M" Corporation is a corporation duly organized and existing pursuant to the laws of the State of New York and maintains its principal place of business at 207 West 36th Street, New York, New York 10018.

11.     Defendant 268 SH Restaurant Corporation is a corporation duly organized and existing pursuant to the laws of the State of New York and maintains its principal place of business at 141 West 38th Street, New York, New York 10018.

12.     Defendant Delmonico's Distribution LLC is a limited liability company duly organized and existing pursuant to the laws of the State of Delaware and maintains its principal place of business at 141 West 38th Street, New York, New York 10018.

13.     Defendant 268 SH Realty Corporation is a corporation duly organized and existing pursuant to the laws of the State of New York and maintains its principal place of business at 141 West 38th Street, New York, New York 10018.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1331 and §1338.  This Court has jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

3

## FACTUAL ALLEGATIONS

### The Parties' Relationship

16.     In or around 1998, Plaintiffs Ferdo Grgurev ("Ferdo") and Omer Grgurev ("Omer"), together with Defendants Milan Licul ("Milan") and Branko Turcinovic ("Branko"), formed Ocinomled for the purpose of purchasing from CIBE Beaver LLC a restaurant known as Delmonico's, operating at 56 Beaver Street, New York, New York 10004 ("Delmonico's").

17.     In acquiring the restaurant, Ocinomled also acquired the right to use the DELMONICO'S name, as well as all other rights to the DELMONICO'S name held by CIBE Beaver LLC.

18.     From the outset, Plaintiffs Ferdo and Omer, and Defendants Milan and Branko, were each 25% equal owners of Ocinomled.  Ocinomled does not have a governing operating agreement or shareholders agreement.

19.     Prior to forming Ocinomled, Plaintiffs Ferdo and Omer, and Defendants Milan and Branko, had partnered together for many years in other restaurants, including Scaletta, located at 50 West 77th Street. Scaletta continues to operate through Plaintiff 50/50 Restaurant Corp. ("50/50") , which is owned in equal parts by the same four individuals.

20.     Defendants Milan and Branko owned other restaurants separate and apart from the restaurants they owned with Plaintiffs Ferdo and Omer, including Murano Restaurant and Arno Restaurant, the latter of which is owned and operated by Milan and Branko through Defendant Balarini Restaurant Corporation ("Balarini").

21.     Defendant Milan was, at all relevant times, responsible for maintaining the financial books and records of both Scaletta and Delmonico's.

4

**Delmonico's Restaurant and the DELMONICO'S Mark**

22.     After Plaintiffs Ferdo and Omer, and Defendants Milan and Branko, purchased Delmonico's through Ocinomled, the restaurant was closed for refurbishment and re-opened in mid-May 1998 under the DELMONICO'S mark.

23.     In operating and promoting its restaurant, Plaintiff Ocinomled maintains the classic and upscale ambiance for which Delmonico's is famous, and its menu includes classic Delmonico's dishes, such as Lobster Newburg, Oysters Rockefeller, Baked Alaska, Eggs Benedict, Chicken a la Keene, and, of course, Delmonico's Steak. The high-end reputation of the restaurant is inextricably tied to the DELMONICO'S name.

24.     On or around February 23, 2004, Plaintiff Ocinomled filed an application with the U.S. Patent and Trademark Office (the "USPTO") for registration of the DELMONICO'S service mark in Class 43 for Restaurant Services (the "Restaurant Mark"). The application is assigned U.S. Serial Number 76577253.

25.     On or around October 11, 2007, Plaintiff Ocinomled filed an application with the USPTO for registration of the DELMONICO'S trademark and service marks for various products and services covered by Classes 8, 16, 18, 21, 25, 29, 30, 34 and 41 including, among other things, cutlery, cookbooks, bags and briefcases, dinnerware, clothing, prepared foods, salad dressings and sauces, cigars and cigar accessories, and entertainment services (the "Product Mark;" collectively with the Restaurant Mark, the "Marks"). The application is assigned U.S. Serial Number 77301695.

26.     Plaintiff Ocinomled's applications are currently suspended in accordance with USPTO procedure pending resolution of a concurrent use registration application made by an

5

unrelated party in connection with its operation of an unrelated restaurant using the Delmonico's name in or around Albany, New York.

27.     The Mark is famous and an iconic symbol of a fine dining steakhouse.  The Mark also invokes the goodwill associated with the historical roots of the restaurant.  Indeed, in 1998, shortly following the re-opening of the restaurant by Ocinomled, The New York Times identified Delmonico's as "possibly the most famous name in American history."  A true and correct copy of The New York Times Article is attached hereto as **Exhibit A**.

**Delmonico's Operations and Profits**

28.     By all accounts, Ocinomled's purchase and re-opening of Delmonico's restaurant was successful.  Indeed, since re-opening, the restaurant has received positive reviews from the New York Times, the Financial Times, Esquire Magazine and Time Magazine.

29.     In addition to media attention, upon information and belief, Delmonico's restaurant is and has been extremely profitable for the last fifteen years.

30.     Upon information and belief, for the past several years, Delmonico's has averaged net revenues of at least $5 million per year.

31.     Upon opening Delmonico's, the four owners jointly decided that none of them would be directly involved in the day-to-day operations of the restaurant.  Defendants Milan and Branko devoted their time to managing their other restaurants, Arno and Murano.  Meanwhile, Plaintiffs Ferdo and Omer continued running the day-to-day operations of Scaletta.

32.     Defendants Milan and Branko appointed Branko's son, Defendant Dennis Turcinovic ("Dennis"), as one of the two co-managers of Delmonico's restaurant.

33.    Defendant Milan conducts the bookkeeping for Delmonico's restaurant and, upon information and belief, maintains the financial books and records of Delmonico's at the offices of Arno Restaurant – the restaurant jointly owned by himself and Defendant Branko.

34.    Upon information and belief, in their respective roles, Defendants Milan and Dennis were and are responsible for collecting all cash receipts from Delmonico's restaurant.

35.    The four owners of Ocinomled received regular salaries from Ocinomled. Their salaries were determined by Defendant Milan and paid out through the company's payroll.

36.    Plaintiffs Omer and Ferdo were each initially paid $500 per week. Their salaries were subsequently raised to $1500 per week. Upon information and belief, Defendant Branko was also paid $1500 per week and Defendant Milan paid himself $2000 per week.

37.    However, as of April 9, 2015, Defendants Milan and Branko unilaterally elected to cut off Plaintiffs Ferdo and Omer's compensation, without explanation.

38.    Upon information and belief, at the same time that Defendants Milan and Branko cut off Plaintiffs Ferdo and Omer's paychecks, Defendant Milan doubled Defendant Branko's compensation to $3000 per week, and increased his own compensation to $3500 per week.

**Defendants' Unauthorized Exploitation of Ocinomled's Mark**

*The Sauces*

39.    Based on the success of Delmonico's restaurant, Defendants Milan and Branko saw an opportunity to capitalize on the DELMONICO'S Mark.

40.    However, rather than expanding the brand for the benefit of Plaintiff Ocinomled, Defendants Milan and Branko elected to pursue opportunities for their own benefit, to the exclusion of Plaintiffs Ocinomled, Ferdo and Omer.

41.     Specifically, Defendants Milan and Branko undertook to manufacture, distribute and sell products under the DELMONICO'S Product Mark, including Delmonico's steak sauce (the "Steak Sauce"), as well as other sauces, salad dressings and marinades.

42.     Initially, Defendants Milan and Branko presented the idea of developing and marketing a Steak Sauce under the DELMONICO'S Product Mark to Plaintiffs Omer and Ferdo.

43.     In presenting the idea, Defendants Milan and Branko advised Plaintiffs Ferdo and Omer that they would pay Ocinomled a royalty in connection with its use of the DELMONICO'S Product Mark in manufacturing, distributing and selling the Steak Sauce.

44.     Based upon the foregoing representations, Plaintiffs Ferdo and Omer did not object to the Steak Sauce, and Defendants Milan and Branko began manufacturing, distributing and selling Steak Sauce under the DELMONICO'S Product Mark.

45.     Upon information and belief, Ocimonled has not received any royalties or compensation as a result of Defendant Milan and Branko's use of the Product Mark in connection with the Steak Sauce.

46.     Defendants Milan and Branko's use of the Product Mark did not end with the Steak Sauce, however.

47.     Instead, after developing and distributing the Steak Sauce, Defendants Milan and Branko unilaterally decided to use the DELMONICO'S Product Mark for pasta sauces, salad dressings and marinades (the "Sauces").

48.     Defendants Milan and Branko did not advise their fellow owners of Ocinomled of their plan to manufacture, distribute and sell the Sauces.

49.     Defendants Milan and Branko did not obtain a license or the necessary consent for use of the DELMONICO'S Product Mark from Plaintiff Ocinomled in connection with the manufacture, distribution or sale of the Sauces.

50.     Without the consent of 50% of Ocinomled's owners, Defendants Milan and Branko instead elected to manufacture, distribute and sell these additional products outside of Plaintiff Ocinomled and for their own personal benefit.

51.     Upon information and belief, Defendants Milan and Branko formed Defendant Delmonico's Distribution LLC ("Delmonico's Distribution") for the purpose of manufacturing, distributing and selling the Sauces in interstate commerce.

52.     Upon information and belief, Defendant Delmonico's Distribution, at the direction of Defendants Milan and Branko, is currently selling these products nationwide online and in stores.

53.     Neither Defendants Milan, Branko nor Delmonico's Distribution reported their earnings from the manufacture, distribution and sale of the Sauces to Plaintiff Ocinomled.

54.     Neither Defendants Milan, Branko nor Delmonico's Distribution have paid a license fee or royalties to Plaintiff Ocinomled in connection with the manufacture, distribution and sale of the Sauces.

55.     By using the DELMONICO'S Product Mark in the manufacture, distribution and sale of the Sauces without permission, Defendants Milan, Branko and Delmonico's Distribution are improperly benefitting from the DELMONICO'S brand name and goodwill associated therewith, without compensating the owner of the Product Mark.

56.     The use of DELMONICO'S Product Mark by Defendants Milan, Branko and Delmonico's Distribution is likely to cause confusion and is causing confusion amongst consumers concerning the true origin, sponsorship or approval of the Sauces.

57.     Plaintiff Ocinomled has been damaged by Defendants Milan, Branko and Delmonico's Distributions' improper and unauthorized use of Ocinomled's Product Mark because, among other things, Ocinomled has not received any compensation for the use of its Product Mark and Ocinomled's Product Mark has been blurred or tarnished by the distribution of unauthorized products.

### The Unauthorized Restaurants

58.     Defendants' unauthorized use of Ocinomled's Marks is not limited to the sale of the Sauces.

#### Delmonico's Kitchen

59.     Defendants Milan and Branko also began using the world-renowned Delmonico's name on other restaurants owned by corporations that they alone own and control.

60.     For example, Defendants Milan and Branko, through Defendant Five "M" Corporation, an entity they own and control ("Five M"), converted Murano into a restaurant entitled "Delmonico's Kitchen."

61.     Delmonico's Kitchen is located in Midtown Manhattan at 207 West 36th Street, New York, NY 10018.

62.     Plaintiffs have no ownership stake in or affiliation with Defendant Five "M" Corporation.

63.     Defendants Milan, Branko and Five M renamed Murano "Delmonico's Kitchen" with the intention of trading on the goodwill and reputation of Plaintiff Ocinomled's Restaurant

10

Mark and confusing customers into believing that Delmonico's Kitchen is affiliated with, or is somehow an extension of, Delmonico's Restaurant.

64.     At no time did Defendants Milan, Branko or Five M obtain permission from Plaintiffs Ferdo or Omer to use the DELMONICO'S name in connection with their restaurant, "Delmonico's Kitchen." Nor did they obtain a license or the necessary consent for use of the DELMONICO'S Restaurant Mark from Plaintiff Ocinomled.

65.     Neither Defendants Milan, Branko nor Five M reported the revenues earned from Delmonico's Kitchen to Plaintiff Ocinomled.

66.     Neither Defendants Milan, Branko nor Five M have paid a license fee or royalties to Plaintiff Ocinomled in connection with their use of the Delmonico's Restaurant Mark.

67.     The use of the Restaurant Mark in connection with the operation of Delmonico's Kitchen is likely to confuse consumers who mistakenly believe that Delmonico's Kitchen is affiliated with Plaintiffs' Delmonico's Restaurant.

68.     Indeed, Defendants Milan, Branko and Five M are blatantly encouraging consumer confusion by misrepresenting the existence of a connection between Plaintiffs' restaurant and Delmonico's Kitchen.

69.     Delmonico's Kitchen's website expressly misrepresents that "Delmonico's, the country's first fine dining restaurant, has expanded its premier location at 56 Beaver Street to Midtown Manhattan." The website also references the year 1837 – the believed date that the original Delmonico's restaurant was opened. A true and correct copy of Delmonico's Kitchen's website as of December 11, 2015 is attached hereto as **Exhibit B**.

70.     These blatant misrepresentations establish that Defendants Milan, Branko and Five M are using the goodwill and brand recognition of Plaintiff Ocinomled's Restaurant Mark

11

to promote Delmonico's Kitchen and to confuse customers into believing that Delmonico's Kitchen is affiliated with Plaintiff Ocinomled's famous Delmonico's restaurant.

71.     These improper efforts have also proved successful, as several consumers have confused Delmonico's Kitchen with the Plaintiffs' restaurant.  For example, several consumer reviews on public websites such as Yelp reflect that consumers believe that Delmonico's Kitchen is affiliated with Plaintiff Ocinomled's famous Delmonico's restaurant.

72.     By using the DELMONICO'S Restaurant Mark without permission, Defendants Milan, Branko and Five M are improperly benefitting from the DELMONICO'S brand name and goodwill associated therewith, without compensating the owner of the Restaurant Mark.

73.     The use of DELMONICO'S Restaurant Mark by Defendants Milan, Branko and Five M is likely to cause confusion and is causing confusion amongst consumers concerning the true origin, sponsorship or approval of Delmonico's Kitchen.

74.     Plaintiff Ocinomled has been damaged by the improper and unauthorized use of its Restaurant Mark by Defendants Milan, Branko and Five M because, among other things, Ocinomled has not received any compensation for the use of its Restaurant Mark and Ocinomled's Restaurant Mark has been blurred or tarnished by the perceived affiliation with Delmonico's Kitchen.

### Delmonico's of Southampton

75.     In addition to Delmonico's Kitchen, Defendants Milan and Branko, through Defendant 268 SH Restaurant Corp., an entity they own and control ("SH Restaurant"), also improperly used the Delmonico's Restaurant Mark for another restaurant they opened in 2013 under the name "Delmonico's of Southampton."

12

76.     Delmonico's of Southampton was located at 268 Elm Street, Southampton, NY 11968.

77.     Plaintiffs have no ownership stake in or affiliation with Defendant SH Restaurant.

78.     Defendants Milan, Branko and SH Restaurant named their restaurant "Delmonico's of Southampton" with the intention of trading on the goodwill and reputation of Plaintiff Ocinomled's Restaurant Mark and to confuse customers into believing that the Southampton restaurant was affiliated with, or was an extension of, Delmonico's restaurant.

79.     At no time did Defendants Milan, Branko or SH Restaurant obtain permission from Plaintiffs Ferdo or Omer to use the DELMONICO'S name in connection with Plaintiff Ocinomled's restaurant.  Nor did they obtain a license or the necessary consent for use of the DELMONICO'S Restaurant Mark from Plaintiff Ocinomled.

80.     Neither Defendants Milan, Branko nor SH Restaurant reported the revenues earned from Delmonico's of Southampton to Plaintiff Ocinomled.

81.     Neither Defendants Milan, Branko nor SH Restaurant paid a license fee or royalty to Plaintiff Ocinomled in connection with their use of the Delmonico's Restaurant Mark.

82.     The use of the Restaurant Mark in connection with the operation of Delmonico's of Southampton is likely to confuse consumers who believe that Delmonico's of Southampton is affiliated with Plaintiffs' Delmonico's Restaurant.

83.     Indeed, Defendants Milan, Branko and SH Restaurant encouraged consumer confusion by mischaracterizing Delmonico's Southampton as an "offshoot" of the Delmonico's flagship New York City location, promoting the false assumption of a connection between Plaintiffs' restaurant and Delmonico's Kitchen.

84.   Thus, Defendants Milan, Branko and SH Restaurant have used the goodwill and brand recognition of Plaintiff Ocinomled's Restaurant Mark to promote Delmonico's of Southampton and to confuse customers into believing that Delmonico's of Southampton is affiliated with Plaintiff Ocinomled's famous Delmonico's restaurant.

85.   These improper efforts have also proved successful as, upon information and belief, several consumers confused Delmonico's of Southampton as being affiliated with the Plaintiffs' restaurant.  For example, several publicly available reviews reflect that consumers believed that Delmonico's of Southampton was another location of Plaintiff Ocinomled's famous Delmonico's restaurant.

86.   Upon information and belief, Delmonico's of Southampton closed in 2015.

87.   By using the DELMONICO'S Restaurant Mark without permission, Defendants Milan, Branko and SH Restaurant improperly benefitted from the DELMONICO'S brand name and goodwill associated therewith, without compensating the owner of the Restaurant Mark.

88.   The use of DELMONICO'S Restaurant Mark by Defendants Milan, Branko and SH Restaurant likely caused confusion amongst consumers concerning the true origin, sponsorship or approval of Delmonico's of Southampton.

89.   Plaintiff Ocinomled has been damaged by the improper and unauthorized use of Ocinomled's Restaurant Mark by Defendants Milan, Branko and SH Restaurant because, among other things, Plaintiff Ocinomled did not receive any compensation for the use of its Restaurant Mark and Plaintiff Ocinomled's Restaurant Mark has been blurred or tarnished by the perceived affiliation with Delmonico's of Southampton.

90.     Defendants' improper use of the Ocinomled's Restaurant Mark in connection with Delmonico's Kitchen and Delmonico's of Southhampton is further highlighted by the fact that Defendants simply ignored demands by Plaintiffs to cease using the Restaurant Mark.

91.     On November 12, 2013, counsel for Plaintiffs Ferdo and Omer, as 50% shareholders of Plaintiff Ocinomled, served a Cease and Desist Letter (the "C&D Letter") upon Defendants Milan and Branko, advising them that their use of the DELMONICO'S name in connection with Delmonico's Kitchen and Delmonico's of Southhampton was improper and unauthorized, and constituted a breach of Milan and Branko's fiduciary duties as shareholders of Ocinomled.

92.     The C&D Letter further demanded that use of the DELMONICO'S name in connection with the unaffiliated restaurants cease immediately, and that continued use of the name would cause confusion in the marketplace and substantial damages.

93.     Despite receiving such notice, Defendants Milan, Branko, Five M and SH Restaurant failed to heed the C&D Letter's demand and continued to willfully use the DELMONICO'S name without authorization in connection with their unaffiliated restaurants.

94.     Such willful misuse of the Restaurant Mark caused substantial damage to Plaintiffs.

**Defendants' Missappropriation of Plaintiffs' Funds**

*Misuse of Delmonico's Receipts*

95.     Defendants Milan, Branko, Dennis and their various corporate entities also misappropriated funds and resources that rightfully belonged to Plaintiffs.

96.     Defendant Milan has been, at all times relevant, responsible for maintaining the financial books and records for each of the restaurants co-owned by Defendants Milan and Branko, and Plaintiffs Ferdo and Omer, including Delmonico's and Scaletta.

97.     As equal owners of Plaintiff Ocinomled, a closely-held corporation, Defendants Milan and Branko each owe fiduciary duties to their co-owners, Plaintiffs Ferdo and Omer.

98.     Upon information and belief, Defendant Milan has routinely misappropriated funds from cash receipts and other income received by Delmonico's for his own benefit and for the benefit of his other companies.

99.     Specifically, upon information and belief, Defendants Milan, Branko and SH Restaurant used funds received at Delmonico's -- which belonged to Plaintiff Ocinomled -- to purchase the building that housed Delmonico's of Southampton, through another entity controlled by Defendant Milan, Defendant SH Realty, and to establish that restaurant. Upon information and belief, the purchase price of the Southampton's location was in excess of $3 million, at least a portion of which was paid for with Plaintiff Ocinomled's funds.

100.    Upon information and belief, Defendants Milan, Branko and SH Restaurant, without authorization, may have also put up Ocinomled's Delmonico's Restaurant as collateral for the loan they took to develop Delmonico's of Southhampton.

101.    Similarly, upon information and belief, Defendants Milan, Branko and Five M used Delmonico's funds, which belonged to Plaintiff Ocinomled, to refurbish and reinvent Murano restaurant into Delmonico's Kitchen. Upon information and belief, the refurbishment and reinvention cost approximately $600,000, at least a portion of which was paid for with Ocinomled's funds.

102.   Upon information and belief, Defendants Milan, Branko and Delmonico's Distribution used Plaintiff Ocinomled's funds to finance the creation, marketing and distribution of the Sauces.

103.   Upon information and belief, Defendant Dennis, as co-manager of Delmonico's, had regular access to the cash received during the course of Delmonico's daily operations, and provided a portion of that cash to Defendant Milan to be used for these improper purposes.

104.   Upon information and belief, Defendant Branko was aware of this regular "siphoning" of cash to Defendant Milan, and assisted in those improper transactions.

105.   Upon information and belief, Defendant Milan manipulated the Ocinomled general ledger to conceal the actual cash receipts of Delmonico's, in order to aid the transfer of cash receipts to Five M, SH Realty, SH Restaurant, Delmonico's Distribution, and Balarini Restaurant Corp., all to be applied to infringing products and restaurants.

106.   At the same time that Defendant Milan was misappropriating Plaintiff Ocinomled's funds, with the assistance of Defendants Branko and Dennis, Defendant Milan unilaterally cut off Ocinomled salaries to Plaintiffs Ferdo and Omer.

107.   In addition to misappropriating Plaintiff Ocinomled's funds, Defendants Milan and Branko, through Defendants Five M and SH Restaurant, also used other Delmonico's resources for the benefit of their other restaurants.

108.   Specifically, Defendants Milan and Branko repeatedly used Delmonico's chefs and waiters at Delmonico's of Southampton and Delmonico's Kitchen but, upon information and belief, paid these employees from Plaintiff Ocinomled's payroll, despite Ocinomled having no interest in these other two restaurants.

17

109.   As a result of Defendants' misappropriation of Ocinomled funds and resources for their own benefit, Plaintiff Ocinomled has incurred significant financial harm.

110.   Similarly, Plaintiffs Ferdo and Omer have been damaged by Defendants' misappropriation, as equal owners of Plaintiff Ocinomled, as the misappropriation of funds directly impacted the profitability of Ocinomled.

### Misuse of FEMA and Insurance Claim Proceeds

111.   In addition to the unauthorized and willful misuse of Plaintiff Ocinomled's Marks and its funds and resources, Defendant Milan also misappropriated certain federal disaster relief funds to which Ocinomled was entitled.

112.   In or around late October 2012, much of downtown Manhattan was damaged by Hurricane Sandy, including Delmonico's Restaurant.

113.   Shortly after the hurricane, Defendant Milan advised his co-owners of Plaintiff Ocinomled that Delmonico's had incurred about $3 million in damages caused by the storm, due to several feet of water flooding the restaurant, including a private dining room and wine cellar.

114.   The owners of Plaintiff Ocinomled jointly decided to file a claim with the Federal Emergency Management Agency ("FEMA") in order to recover for Ocinomled's losses.

115.   About two years later, Plaintiffs requested information concerning the status of the FEMA claim and Defendant Milan advised them that no money had ever been paid on Ocinomled's FEMA claim.

116.   Upon further inquiry, however, Plaintiffs learned from Ocinomled's accountant that this statement by Defendant Milan was false, and that FEMA had in fact paid some funds to Plaintiff Ocinomled.

117.     Upon information and belief, Defendant Milan misappropriated the FEMA funds that had been paid to Ocinomled and used them for his own benefit and for the benefit of Defendants SH Restaurant, SH Realty and Five M.

118.     Defendant Milan's misappropriation of FEMA funds damaged Plaintiff Ocinomled, as it was entitled to such funds to remedy the damage to the restaurant caused by Hurricane Sandy.

**Defendant Milan's Interference With The Scaletta Lease**

119.     Milan's misconduct was not just limited to Delmonico's.

120.     As set forth above, Defendants Milan and Branko co-own another restaurant with Plaintiffs Omer and Ferdo called Scaletta. They have co-owned this restaurant since 1988.

121.     The parties co-own this restaurant through Plaintiff 50/50, a corporation owned in equal shares by Defendants Milan and Branko, and Plaintiffs Omer and Ferdo.

122.     As with Ocinomled, Milan was and is in control of 50/50's books.

123.     In addition, 50/50's books are maintained by the same accountant that Defendant Milan engaged as the accountant for Ocinomled's books.

124.     Since its opening in 1988, 50/50 has operated Scaletta in a leased space located on the Upper West Side of Manhattan, and has successfully renewed its lease upon expiration of each lease term.

125.     The current lease for Scaletta is set to expire at the end of March 2016.

126.     Defendant Milan, on behalf of 50/50, unilaterally took control of negotiations with the landlord to renew the current lease. Indeed, Milan notified Plaintiffs Ferdo and Omer that he (Milan) was the only person with authority to negotiate a new lease for the restaurant.

19

127.    Despite Milan's insistence that he control the negotiations to renew the lease, 50/50 has, to date, been unable to reach terms on a renewal of its lease with its landlord.

128.    Upon information and belief, Milan is intentionally stalling negotiations and purposely refusing to reach terms on 50/50's lease renewal.

129.    Upon information and belief, Milan is interfering with the negotiation of 50/50's lease renewal in order to punish Plaintiffs Ferdo and Omer for disputing Milan's misconduct with respect to Ocinomled, and to pressure Ferdo and Omer not to assert claims with regard to his other wrongdoing.

130.    In so interfering, Milan is acting solely out of malice.

131.    Milan's interference and refusal to reach terms on the lease renewal has caused damage to 50/50, and continues to damage 50/50 by risking the future of Scaletta restaurant.

### FIRST CAUSE OF ACTION
### TRADEMARK INFRINGEMENT UNDER 15 U.S.C. 1114(1) against
### Defendants Milan, Branko, Five M, SH Restaurant, and Delmonico's Distribution

132.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-131 as if fully set forth herein.

133.    Plaintiff Ocinomled has applied for federal registration of its Marks and such applications are pending, subject to approval upon resolution of a separate unrelated concurrent use proceeding.

134.    Defendants' activities set forth above constitute infringement of the Restaurant and Product Marks and are in willful disregard of Plaintiff Ocinomled's rights.

135.    Defendants' use of the Marks in connection with the distribution and sale of the Sauces and the offering of restaurant services has already caused and is likely to continue causing confusion, to deceive, or to cause mistake, and falsely creates the impression that

Defendants' products and services are authorized, sponsored, affiliated or approved by Plaintiff Ocinomled.

136.    Defendants have used and continue to use the Marks with the knowledge that they are likely to cause confusion, mistake or deceive.

137.    Plaintiff Ocinomled is suffering irreparable harm and damage as a result of Defendants' trademark infringement, such that money damages would not adequately compensate Ocinomled for the harm to its proprietary rights, established goodwill and business reputation, and such that a permanent injunction enjoining Defendants continued use of the Marks is necessary.

138.    Accordingly, Defendants' actions constitute trademark infringement under 15 U.S.C. §1114(1).

**SECOND CAUSE OF ACTION**
**UNFAIR COMPETITION–FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. 1125(a)**
**against Defendants Milan, Branko, Five M, SH Restaurant and Delmonico's Distribution**

139.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-138 as if fully set forth herein.

140.    Defendants' use of the DELMONICO'S designation in connection with their offering of products and services is a false designation of origin and/or a false or misleading representation and description.

141.    The use of the DELMONICO'S brand in connection with unaffiliated restaurants and the Sauces has caused and is likely to cause confusion, cause mistake or deceive as to an affiliation, connection or association of Defendants with Plaintiff Ocinomled and/or as to the origin, sponsorship or approval of Defendants' products or services by Ocinomled.

142.    Defendants' activities are in willful disregard of Plaintiff Ocinomled's rights.

143.   Defendants have used and continue to use the Marks with the knowledge that they are likely to cause confusion, mistake or deceive as to an affiliation, connection or association of Defendants' products and services with Plaintiff Ocinomled.

144.   Plaintiff Ocinomled is suffering irreparable harm and damage as a result of Defendants' false designation of origin and false and misleading representations and descriptions, such that money damages would not adequately compensate Ocinomled for the harm to its proprietary rights, established goodwill and business reputation, and such that a permanent injunction enjoining Defendants continued use of the Marks is necessary.

### THIRD CAUSE OF ACTION
### DILUTION UNDER 15 U.S.C. §1125(c)
**against Defendants Milan, Branko, Five M, SH Restaurant and Delmonico's Distribution**

145.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-144 as if fully set forth herein.

146.   The DELMONICO'S Marks are famous and distinctive under 15 U.S.C. §1125(c), as the DELMONICO'S name is recognized by diners nationwide and internationally and serves as an iconic symbol of high end dining.

147.   Defendants' use of the DELMONICO'S name in connection with other restaurants that are unrelated to Plaintiff Ocinomled and do not bear the same standard of dining as Delmonico's Restaurant causes dilution of the distinctive quality of Ocinomled's Marks.

148.   Defendants are using the designation DELMONICO'S with the willful intent to trade upon the world-renowned reputation of Plaintiff Ocinomled's Delmonico's Restaurant and to cause dilution to Ocinomled's Marks.

149.   Plaintiff Ocinomled is suffering irreparable harm and damage as a result of Defendants' actions, such that money damages would not adequately compensate Ocinomled for

the harm to its proprietary rights, established goodwill and business reputation, and such that a permanent injunction enjoining Defendants continued use of the Marks is necessary.

## FOURTH CAUSE OF ACTION
### BREACH OF THE DUTY OF LOYALTY
#### against Defendants Milan, Branko and Dennis

150.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-149 as if fully set forth herein.

151.   Defendants Milan and Branko are 50% co-owners of Plaintiff Ocinomled, and Defendant Dennis is employed by Ocinomled as one of two co-managers of Delmonico's Restaurant, handling its day-to-day operations.

152.   As owners of Plaintiff Ocinomled, Defendants Milan and Branko owe a duty of loyalty to their co-owners, Plaintiffs Ferdo and Omer, and to Ocinomled.  As co-manager of Delmonico's Restaurant, Defendant Dennis owes a duty of loyalty to his employer, Ocinomled.

153.   Defendants have engaged in a variety of self-dealing, including without limitation: (i) misappropriating cash receipts and revenues received at Delmonico's Restaurant for their own benefit; (ii) assisting in the concealment of such misappropriation; (iii) wrongfully withholding distributions from Plaintiffs Ferdo and Omer; and (iv) assisting in transactions for the benefit of the corporate Defendants using Plaintiffs' funds.

154.   Moreover, Defendant Milan and, upon information and belief, Defendant Dennis, intentionally altered Plaintiff Ocinomled's general ledger, payroll and tax documentation to conceal revenues and to misuse Oncinomled's resources for their own benefit and for the benefit of the corporate Defendants whom they control.

155.   Defendants Milan, Branko and Dennis' breaches of their duty of loyalty have damaged Plaintiffs Ocinomled, Ferdo and Omer in an amount to be determined at trial, but believed to be no less than $5,000,000.

## FIFTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### against Defendants Milan and Branko

156.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-155 as if fully set forth herein.

157.    As 50% owners of Plaintiff Ocinomled and Plaintiff 50/50, Defendants Milan and Branko owe fiduciary duties to Ocinomled and their co-owners, Plaintiffs Ferdo and Omer.

158.    In a bad faith attempt to wrest power and control over the DELMONICO'S brand away from Plaintiffs, Defendants Milan and Branko breached their fiduciary duties to their co-owners by, among other things: (i) using Plaintiff Ocinomled's funds and resources to benefit unrelated   restaurants operated by the corporate defendants; (ii) intentionally withholding Ocinomled's distributions from co-owners Ferdo and Omer; (iii) intentionally misappropriating Ocinomled's Marks without obtaining authorization or providing compensation for such use; and (iv) withholding federal disaster relief funds from Ocinomled and pocketing such funds for their own use and benefit.

159.    Defendants Milan and Branko's breaches of their fiduciary duties have damaged Plaintiffs Ocinomled, Ferdo and Omer in an amount to be determined at trial, but believed to be no less than $5,000,000.

160.    In a bad faith attempt to punish Plaintiffs Ferdo and Omer for disputing Defendants' wrongdoing with respect to the DELMONICO'S brand, Defendant Milan abused his position in negotiating the lease renewal for Scaletta, interfering with 50/50's ability to reach terms with its landlord.

161.    Defendant Milan's malicious interference constitutes, among other things, a breach of his fiduciary duty to his fellow 50/50 shareholders, and has caused harmed to Plaintiffs

50/50, Ferdo and Omer in an amount to be determined at trial, but believed to be no less than $2,500,000.

162.    Indeed, because Defendant Milan's manipulation of the lease negotiations for 50/50 and Scaletta has been done in bad faith, and because it threatens the continued existence of Scaletta, Plaintiffs 50/50, Ferdo and Omer are also entitled to punitive damages, in an amount to be proven at trial but believed to be in excess of $7.5 million.

## SIXTH CAUSE OF ACTION
### ACCOUNTING against All Defendants

163.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-162 as if fully set forth herein.

164.    As co-owners of Plaintiff Ocinomled, Plaintiffs Ferdo and Omer are entitled to inspect all of the books and records of Ocinomled, including the books and records maintained by the Company's accountant.

165.    Defendants Milan and Branko, each of whom owe fiduciary duties to the co-owners of Plaintiff Ocinomled, have caused Ocinomled to refuse to provide the co-owners with Ocinomled's complete and unadulterated books and records.

166.    Plaintiffs do not have an adequate remedy at law.

167.    As a result, Plaintiffs are entitled to access Plaintiff Ocinomled's complete and unadulterated books and records.

## SEVENTH CAUSE OF ACTION
### DECEPTIVE TRADE PRACTICES UNDER N.Y. Gen. Bus. Law §349
### against Defendants Milan, Branko, Five M, SH Restaurant, and Delmonico's Distribution

168.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-167 as if fully set forth herein.

169.     Defendants' use of the DELMONICO'S designation on their restaurants, Delmonico's Kitchen and Delmonico's of Southampton, as well as on the Sauces, was and continues to be a false or misleading representation and description.

170.     The use of the DELMONICO'S brand has caused and is likely to cause confusion, cause mistake or deceive as to an affiliation, connection or association of Defendants with Plaintiff Ocinomled and/or as to the origin, sponsorship or approval of Defendants' products or services by Ocinomled.

171.     Defendants' activities are in willful disregard of Plaintiff Ocinomled's rights.

172.     Defendants have used and continue to use the Marks with the knowledge that they are likely to cause confusion, mistake or deceive as to an affiliation, connection or association of Defendants' products and services with Plaintiff Ocinomled.

173.     Plaintiff Ocinomled is suffering irreparable harm and damage as a result of Defendants' deceptive trade practices.

## EIGHTH CAUSE OF ACTION
### CONVERSION against All Defendants

174.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-173 as if fully set forth herein.

175.     Defendants inappropriately misappropriated cash, revenues and the goodwill of Marks that belong to Plaintiffs by, among other things: (i) using Plaintiff Ocinomled's cash receipts and revenue for their own benefit; (ii) intentionally withholding Ocinomled distributions from Plaintiffs Ferdo and Omer; (iii) misappropriating the goodwill and value of the DELMONICO'S Marks for their own benefit; and (iv) misappropriating federal disaster relief funds paid to Ocinomled for their own use and benefit.

176.    Defendants' willful misappropriation of Plaintiffs' revenue and assets constitutes conversion.

177.    Defendants' conversion has damaged Plaintiffs in an amount to be determined at trial, but believed to be no less than $5,000,000.

## NINTH CAUSE OF ACTION
### UNJUST ENRICHMENT against All Defendants

178.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-177 as if fully set forth herein.

179.    Defendants inappropriately misappropriated cash, revenues and the goodwill of Marks that belong to Plaintiffs by, among other things: (i) using Ocinomled's cash receipts and revenue for their own benefit; (ii) intentionally withholding Ocinomled distributions from Plaintiffs Ferdo and Omer; (iii) misappropriating the goodwill and value of the DELMONICO'S Marks for their own benefit; and (iv) misappropriating federal disaster relief funds paid to Ocinomled for their own use and benefit.

180.    As a result of Defendants' misappropriation of Plaintiffs' resources, Defendants were enriched unjustly.

181.    Plaintiffs were harmed by Defendants' misappropriation.

182.    It is against equity and good conscience to permit Defendants to retain the funds and the value of Marks.

183.    Defendants have thus been unjustly enriched and have damaged Plaintiffs in an amount to be determined at trial, but believed to be no less than $5,000,000.

## TENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
### against Defendant Milan Licul

184.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-183 as if fully set forth herein.

185.   Plaintiff 50/50 Restaurant Corp. has had a long standing business relationship with the landlord of the space in which Scaletta Restaurant operates.

186.   As President of 50/50, Defendant Milan took control of the negotiation of the renewal of 50/50's lease with its landlord for the space in which Scaletta operates.

187.   Upon information and belief, Defendant Milan intentionally interfered with the negotiation of the lease renewal and 50/50's long standing relationship with its landlord.

188.   Defendant Milan was motivated solely by malice in obstructing the negotiations between 50/50 and its landlord to renew the lease of Scaletta.

189.   Defendant Milan's interference has damaged, and continues to damage 50/50 by putting Scaletta's entire future at risk and souring its relationship with its landlord.

190.   As a result of Defendant Milan's interference with 50/50's business relationship with its landlord, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be no less than $2,500,000.

191.   Indeed, because Defendant Milan's interference was done in bad faith, and because it threatens the continued existence of Scaletta, Plaintiffs 50/50, Ferdo and Omer are also entitled to punitive damages, in an amount to be proven at trial but believed to be in excess of $7.5 million.

### JURY DEMAND

Plaintiffs demands trial by jury on all issues so triable herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

1.   ON THEIR FIRST CAUSE OF ACTION, for permanent injunctive relief enjoining Defendants from using the Marks in connection with Defendants' unauthorized restaurants and products and awarding damages in an amount to be determined at trial and trebled caused by Defendants' willful trademark infringement but believed to be at least $1 million;

2.   ON THEIR SECOND CAUSE OF ACTION, for permanent injunctive relief enjoining Defendants from using the Marks in connection with Defendants' unauthorized restaurants and products and awarding damages in an amount to be determined at trial and trebled caused by Defendants' willful unfair competition and false designation of origin, but believed to be at least $1 million;

3.   ON THEIR THIRD CAUSE OF ACTION, for permanent injunctive relief enjoining Defendants from using the Marks in connection with Defendants' unauthorized restaurants and products and awarding damages in an amount to be determined at trial and trebled caused by Defendants' willful dilution but believed to be at least $1 million;

4.   ON THEIR FOURTH CAUSE OF ACTION, for damages in an amount to be determined at trial but believed to be at least $5 million;

5.   ON THEIR FIFTH CAUSE OF ACTION, for damages in an amount to be determined at trial but believed to be at least $2.5 million, plus punitive damages believed to be at least $7.5 million;

6.   ON THEIR SIXTH CAUSE OF ACTION, for an accounting;

7.      ON THEIR SEVENTH CAUSE OF ACTION, for damages in an amount to be determined at trial caused by Defendants' deceptive trade practices;

8.      ON THEIR EIGHTH CAUSE OF ACTION, for damages in an amount to be determined at trial but believed to be at least $5 million;

9.      ON THEIR NINTH CAUSE OF ACTION, for damages in an amount to be determined at trial but believed to be at least $5 million;

10.     ON THEIR TENTH CAUSE OF ACTION, for damages in an amount to be determined at trial but believed to be at least $2.5 million, plus punitive damages believed to be at least $7.5 million; and

11.     Such other relief as this Court deems appropriate.

Dated: New York, New York
       December 16, 2015

PRYOR CASHMAN LLP

By: _____
     Jamie M. Brickell
     jbrickell@pryorcashman.com
     M. Mona Simonian
     msimonian@pryorcashman.com
     7 Times Square
     New York, New York  10036
     (212) 421-4100

     *Attorneys for Plaintiffs*